**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MICHELLE RAINBOTH-VENDITTI**<br> On behalf of herself<br> and all others similarly situated,<br><br> **Plaintiff**,<br><br> v.<br><br> **NATIONAL RETAIL SOLUTIONS, INC.**<br><br> **Defendant**. | **CLASS ACTION COMPLAINT**<br><br> **JURY TRIAL DEMANDED**<br><br> **Civ. No.:** 6:16-CV-0137 (MAD/ATB) |

**Collective and Class Action Claims**

COMES NOW the Plaintiff, Michelle Rainboth-Venditti, individually and on behalf of all others similarly situated, by and through counsel, and hereby sets forth this representative action for violations of the Fair Labor Standards Act under 29 USC § 216(b) and/or representative class actions for violations of the New York Labor Law: Article 19 as follows:

I.    **Preliminary Statement**

1.    Plaintiff, Michelle Rainboth-Venditti, individually and on behalf of all others similarly situated, brings this action against National Retail Solutions, Inc. ("NRS" or "Defendant") for unpaid wages including: minimum wages, straight time, overtime compensation, and related penalties and damages.

2.    Defendant's policies, practices, and/or procedures have required (and continue to require), Plaintiff and all other similarly situated employees to work off-the-clock. Defendant's policies, practices, and/or procedures also fail and refuse to reasonably reimburse Plaintiff and all other similarly situated employees for automobile and business expenses incurred in the scope of their employment with Defendant.

3.     Therefore, Defendant's policies, practices, and/or procedures result in a willful failure to properly pay minimum wages, straight time, and overtime compensation due and owing to Plaintiff and all other similarly situated employees.  Doing so is in direct violation of both state and federal law.

4.     Defendant employs hundreds of persons across the United States as Merchandisers.

5.     Each day, NRS sent Merchandisers to retail stores where they stock and move product; install, set up, maintain, and dismantle product displays; and collect information from the stores.

6.     However, NRS does not pay its Merchandisers for all of the time that they are required to work. In addition, NRS does not reimburse its Merchandisers for their mandatory, employment-related internet, data service, and/or cellular phone access.

7.     Further, instead of compensating its Merchandisers for approximate, reasonable expenses incurred through the business use of their vehicles, NRS only pays its Merchandisers $0.30 per mile and refuses to pay for the first thirty miles driven each day. This mileage rate results in unreasonably low reimbursement rates, which fall beneath any reasonable approximation of actual expenses incurred.

8.     During some or all workweeks, Merchandisers' unreimbursed expenses and off-the-clock hours cause the Merchandisers' wages to fall below the minimum wage requirements of federal and state law. Similarly, because Merchandisers work off-the-clock hours, Defendant has failed to pay required wages at a rate of one and one half times their regular rate of pay.

9.     Plaintiff Michelle Rainboth-Venditti, and all other similarly situated employees, work or previously worked as Merchandisers for NRS.  This lawsuit is brought:

        A.      Under the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201, *et seq.,* as a collective action to recover unpaid minimum and overtime wages owed to Plaintiff and all other similarly situated workers employed by Defendant NRS; and

        B.      Under the New York Labor Laws ("NYLL"), as a Rule 23 class action to recover Merchandisers' unpaid minimum and overtime wages.

10.     This is a "hybrid" action in which both "opt-in" and "opt-out" representative claims are asserted. The NYLL claims are brought as traditional class action claims under FED. R. CIV. P. 23, in which class members are given the opportunity to opt-out of the case. Alternatively, pursuant to 29 U.S.C. §216(b), FLSA class members opt-in to the case after it is conditionally certified as a collective action.

## II.    **Jurisdiction and Venue**

11.     The FLSA authorizes private parties to bring court actions in order to recover damages for violation of the wage and hour provisions of the FLSA.  Jurisdiction over Plaintiff's FLSA claims are based on 29 U.S.C. §216(b) and 28 U.S.C. §1331.

12.     For the claims brought under the FLSA, this Court has original federal question jurisdiction pursuant to 28 U.S.C. §1331.

13.     Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over the state statutory claims because they are so interrelated with the FLSA claims that they arose from a common nucleus of operative fact and are part of the same case or controversy.

14.     This Court has personal jurisdiction over Defendant NRS because Defendant conducts business in this Judicial District, and it has substantial business contacts herein.

15.     Venue is proper in this Court because Defendant conducts business, has substantial business contacts, and/or can be found in the Northern Judicial District of New York. Therefore,

under 28 U.S.C. § 1391(b), venue is proper in this Court. Additionally, in substantial part, the causes of action of this controversy arose and occurred within the Northern Judicial District of New York.

16.     At all times relevant to this Complaint, Defendant was and is an "employer" within the meaning of the FLSA and the NYLL.

17.     Defendant employed "employee[s]" at all times relevant to this Complaint. Among those employees were Plaintiff, the Putative FLSA Class Members, and the state law Putative Class Members.

18.     Ms. Rainboth-Venditti and the other putative plaintiffs were engaged in commerce on Defendant's behalf, and/or they worked for Defendant NRS, which is an enterprise engaged in commerce.

19.     Defendant's gross annual operating revenues have exceeded $500,000.00 at all times relevant herein.

## III.    <u>Parties</u>

20.     Defendant employed Plaintiff Rainboth-Venditti as a Merchandiser from approximately December 2013 to July 2015. During that time, she worked in the State of New York on Defendant's behalf. Pursuant to 29 U.S.C. §216(b), Plaintiff Rainboth-Venditti's Consent to Join is attached hereto as "*Exhibit 1*."

21.     Defendant NRS is an Arkansas, For-Profit Corporation that does business within the State of New York, as well as throughout the United States. Its principal office is located at 155 E. Fantinel Blvd., Suite D, Springdale, Arkansas 72762-9256.  NRS may be served by serving its registered agent, Debra Pianalto, 609 Laura Lane, Springdale, Arkansas, 72762.

IV.    **Substantive Allegations**

22.    Defendant "National Retail Solutions is a full-service provider with a national footprint, providing merchandising services for large retail customers and manufacturers."[1]

23.    NRS employs persons as "Merchandisers," which as used herein includes similar positions that have the same or similar duties, responsibilities, and compensation structures. Merchandisers' primary job duties include visiting assigned retail stores in order to stock product, maintain and/or set-up displays, label product as necessary, and collect information regarding the products sold in the assigned retail store.

24.    Frequently, Merchandisers are assigned to multiple retail stores to visit. From these visits, Merchandisers are responsible for ensuring that the merchandise is properly displayed for sale and by bringing down merchandise from top racks to lower accessible shelves, relabeling product bins, rotating seasonal stock, and/or whatever else needed to be done to ensure merchandise is properly for sale. Merchandisers also set-up, install, and maintain product displays.

25.    NRS employed Plaintiff Rainboth-Venditti as a merchandiser from approximately December, 2013 to July 20, 2015. NRS paid Plaintiff $14.00 per hour in this position.

26.    At all times relevant, the national minimum wage, as established by the FLSA has been $7.25 per hour. The applicable New York minimum wage rates are:

    A.    $7.25 per hour from Plaintiff's hire through December 30, 2013;

    B.    $8.00 per hour from December 31, 2013 through December 30, 2014; and

    C.    $8.75 per hour from December 31, 2014 through July 20, 2015.

---

[1] *Welcome: NRS - National Retail Solutions*, NATIONAL RETAIL SOLUTIONS, INC. (last visited December 1, 2015), www.nrsmerch.com.

27.     At no time did Defendant NRS properly pay Plaintiff for all of the hours that she actually worked on NRS's behalf.

*Off-the-Clock Work*

28.     Defendant NRS only pays its Merchandisers for the time they spend working in retail stores.

29.     In order to track the number of hours worked by its Merchandisers, NRS uses an online, phone-based application called Timeworks.

30.     NRS requires that Merchandisers clock-into the Timeworks App only upon arrival at each store. Merchandisers also must clock-out when they leave each retail store. Therefore, Defendant's Merchandisers are only paid for time spent working in retail stores.

31.     However, Merchandisers frequently must begin and end their workdays at home completing necessary administrative tasks. Merchandisers are not compensated for this time spent working outside of the assigned retail store. NRS regularly requires Merchandisers, including Plaintiff during her employment, to do the following tasks before arriving at their assigned retail store at which point they would be able to clock-in:

A.     Receive their assignments via email before departing for the assigned retail store;

B.     Plan their driving route to, from, and/or between stores;

C.     Prepare product displays and signage prior to their arrival at their assigned retail store;

D.     Load the product displays and signage into their vehicle before departing for the assigned retail store and unload the same once they return home;

E.    Receive, respond to, and deal with telephone calls, text messages, and/or emails relating to their work for NRS;

32.    Merchandisers must complete the aforementioned tasks then drive to their assigned stores, and only upon arrival at the store can they clock into their Timeworks App.

33.    Once a Merchandiser completes their work in the assigned store, they must then get their manager's approval before leaving.

34.    When Plaintiff's manager was busy, Plaintiff and other Merchandisers were required to clock-out while waiting on the manager until the manager had an opportunity to approve Plaintiff's work, because management disciplined Merchandisers if they spent too much time in their assigned retail stores.

35.    Additionally, despite beginning their work days in their homes, Merchandisers are not compensated for the time they spend travelling to, from, or between stores. Merchandisers may only clock-in upon arrival to an assisgned retail store and clock-out when leaving each assigned retail store; therefore they are not compensated for any drive time. This is true even when they must work before driving to their assignment and when, on NRS's behalf, they leave one assigned store and drive directly to the next one.

36.    Merchandisers are required to have a cell phone or other mobile device in order to maintain communication with NRS supervisors and managers. Merchandisers receive and are required to read several emails and/or text messages and/or answer multiple phone calls each day regarding the status of projects—they are not paid for any of the time they spend working in this capacity.

37.    Merchandisers are also often forced to clock-out and clock back-in multiple times without ever leaving the retail store at which they are working. Through the Timeworks App,

Merchandisers often would be assigned several different tasks. For each task, a Merchandiser must clock-in and clock-out for each task, creating multiple instances in each day when Merchandisers are not on the clock because the are changing tasks. Indeed, NRS does not permit Merchandisers to leave their assigned retail store until they have received approval from their manager for each assigned task.

38.     NRS requires its Merchandisers to report data based on their store visits on the same day the store is serviced. Merchandisers are expected and required to report the information from their personal mobile devices.

39.     NRS has a policy and practice of only paying Merchandisers for time spent working within retail stores. NRS has a policy and practice of failing to pay its Merchandisers for any time spent outside of retail stores completing required administrative tasks and NRS does not pay its Merchandisers for drive time.

40.     During this same period, Plaintiff's unrecorded drive time, prep time, and administrative time resulted in Plaintiff regularly working more than 40 hours per week. NRS's policy and practice of not compensating Merchandisers for drive and administrative time resulted in a failure to pay overtime compensation at a rate of one and one-half times the regular rate of pay for work performed in excess of 40 hours in an individual work week.

41.     Based on information and belief, all of NRS's Merchandisers had experiences similar to those of Plaintiff. They were subject to the same time recording policy, completed store visits of similar distances, completed store visits at similar frequencies, and were paid similar hourly wages.

42.    The work duties for which Plaintiff and the proposed collective and class members are not paid are integral and indispensable to their principal job duties, are themselves principal duties, and/or fall within the "continuous workday."

43.    NRS's policy and practice of denying Plaintiff and the proposed collective and class members minimum wages, straight time, and overtime pay for all hours worked is unlawful. Plaintiff and the proposed collective and class members are entitled to recover damages for these violations of state and/or federal law.

### Failure to Reimburse Employment Expenses
*NRS's Flawed Reimbursement Policy and Methodology*

44.    On behalf of NRS, Merchandisers must maintain and pay for safe, legally-operable, and insured vehicles in order to travel to, from, and between their assigned retail stores each day. NRS also requires Merchandisers to carry, in their own vehicle, equipment that they need for individual jobs, such as: a company binder, hooks, display signage, order forms, etc.

45.    While visiting retail stores for the primary benefit of NRS, Merchandisers incur costs for gasoline, vehicle parts, vehicle fluids, automobile repair and maintenance services, automobile insurance, and depreciation of their vehicle (collectively: "automobile expenses").

46.    NRS also requires Merchandisers to provide, at their own expense, a personal cell phone or mobile device and internet and/or data services for the discharge of their employment duties.

47.    NRS reimbursed its Merchandisers $0.35 per mile at the inception of Plaintiff's employment, but that was later reduced to $0.30 per mile. Further, the Merchandisers were not allowed to claim the first thirty miles driven each day.

48.     Despite the relative ease of tracking actual miles driven by its Merchandisers, NRS does not do so. NRS's reimbursement rate does not reimburse Merchandisers for all miles driven for NRS's benefit.

49.     During the applicable limitations period, the IRS business mileage reimbursement rate ranged between $0.51 and $0.565 per mile.  Likewise, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the American Automobile Association, have determined that the average cost of owning and operating an average sedan ranged between $0.580 and $0.608 per mile during the same period.  These figures represent a reasonable approximation of the average cost of owning and operating a vehicle for Merchandisers' use in travelling to retail stores.

50.     The driving conditions associated with the work performed by Merchandisers result in more frequent routine maintenance costs, higher costs due to repairs associated with driving, and more rapid depreciation associated with driving a car as much as required by NRS.

51.     NRS's reimbursement policy does not reimburse its Merchandisers for their out-of-pocket expenses, much less other costs they incur to own and operate their vehicle, thus it uniformly fails to reimburse its Merchandisers at any reasonable approximation of the cost of owning and operating their vehicles for the primary benefit of NRS.

52.     NRS also requires its Merchandisers to purchase, with no reimbursement, tools and supplies they need to perform their jobs, such as: a hammer, screwdriver, screws, tape, gloves, etc.

53.     NRS's systematic failure to adequately reimburse automobile and other expenses incurred by Merchandisers constitutes a "kickback" to NRS such that the hourly wages it pays to Plaintiff and other Merchandisers are not paid free and clear of all outstanding obligations.

54.    NRS's failure to adequately reimburse automobile expenses and other expenses incurred by Merchandisers results in a wrongful withholding of wages.

55.    NRS fails to reasonably approximate the amount of its Merchandisers' automobile, internet and/or data service, and cell phone expenses to such an extent that its Merchandisers' wages are diminished beneath both the federal and state minimum wage rate requirements.

56.    In sum, NRS's reimbursement policy and methodology fails to reflect the realities of Merchandisers' automobile, internet and/or data service, phone, and other expenses.

### *NRS's Failure to Reimburse Expenses Causes Minimum Wage Violations*

57.    NRS's mileage reimbursement policy has resulted in an unreasonable underestimation of Merchandisers' expenses, causing systematic violations of federal and various state minimum wage requirements where NRS employs Merchandisers.

58.    NRS paid Plaintiff $14.00 per hour (for those hours actually compensated by Defendant) from approximately December 2013 until July 20, 2015, the date of her termination.

59.    The minimum wage in New York has been:

A.    $7.25 per hour since Plaintiff's inception of employment with Defendant through December 30, 2013;

B.    $8.00 per hour from December 31, 2013 through December 30, 2014; and

C.    $8.75 per hour from December 31, 2014 through July 20, 2015.

60.    During Plaintiff's employment by NRS, the mileage reimbursement rate was $0.35 per mile at the inception of her employment, December, 2013, but was later reduced to $0.30 per mile in March, 2014. Additionally, Plaintiff was not permitted to claim reimbursement for the first thirty miles driven each day.

61.    The IRS business mileage reimbursement rate was $0.565 per mile in 2013, $0.56 per mile in 2014, and $0.57 per mile in 2015, which is a reasonable approximation of the automobile expenses incurred by Merchandisers.

62.    NRS's reimbursement rate does not consider the actual mileage Plaintiff drove on Defendant's behalf, or any other automobile expenses Plaintiff incurred on Defendant's behalf. An unlawful kickback situation arose as a result of NRS's unreasonable reimbursement policies.

63.    This unlawful kickback becomes more significant when considering Plaintiff's internet and/or data service plan, cell phone, and other expenses incurred for NRS's benefit.

64.    Based on information and belief, all of NRS's Merchandisers had similar experiences to those of Plaintiff. They were subject to the same reimbursement policy; received similarly deficient reimbursements; were required to incur similar expenses; completed store visits of similar distances and at similar frequencies; and were paid similar hourly wages.

65.    NRS's unreasonable under-reimbursement significantly diminished Plaintiff's wages for each hour worked. The wages of the putative collective and class action plaintiffs were similarly reduced as they incurred similar expenses and have been provided similar reimbursements. The amount by which Plaintiff's wages were reduced, as a result of not being fairly reimbursed for her expenses, far exceeds the amount over the federal minimum wage NRS paid to any putative class members.

66.    Based on the allegations set forth above, NRS's average under-reimbursement of automobile expenses over the past three years has exceeded the difference between hourly wages paid in each state in which NRS operates and the federal minimum wage during part or all of the limitations period, thereby resulting in company-wide minimum wage violations.

67.    While the amount of NRS's actual reimbursements per store may vary over time and over geographic locations based on the price of gas and other cost differences, NRS is relying on the same flawed policy and methodology with respect to all Merchandisers nationwide. Thus, although reimbursement amounts may differ somewhat, the amounts of under-reimbursements relative to automobile costs incurred are consistent between regions.

### *Combined Effect of Off-the-Clock Time and Failure to Reimburse Expenses*

68.    The combination of unreimbursed automobile, internet and/or data service, cell phone expenses, and off-the-clock work resulted in Merchandisers "kicking back" to NRS wages sufficient to bring that their wages below the federal minimum wage. Thus, NRS paid Plaintiff less than the federal minimum wage in some or all workweeks.

69.    All of NRS's Merchandisers had experiences similar to those of Plaintiff. They were subject to the same reimbursement policy, received similar reimbursements, incurred similar expenses, completed store visits of similar distances, completed store visits at similar frequencies, were subject to the same time-recording policy, and were paid similar hourly wages. The net effect of NRS's flawed policy and methodology, instituted and approved by company managers, is that it willfully fails to pay the federal minimum wage to its Merchandisers. Further, NRS willfully fails to pay minimum wages required by state law in the time periods during which individual states' minimum wage laws require a minimum wage higher than the federal minimum wage. NRS thereby enjoys ill-gained profits at the expense of its employees.

70.    NRS's policy and practice of denying Plaintiff and the proposed collective and class members minimum wages, straight time, and overtime pay for all hours worked is unlawful. Plaintiff and the proposed collective and class members are entitled to recover damages for these violations of state and/or federal law.

*Collective and Class Action Allegations*

71.     Plaintiff hereby incorporates the foregoing paragraphs as though fully set forth herein.

72.     Plaintiff and other similarly situated Merchandisers regularly performed off-the-clock work for which they were not paid. This caused Plaintiff and those similarly situated to work in excess of forty hours per week without receiving, minimum wages, straight time, and overtime compensation, which is a violation of the FLSA and NYLL by NRS.

73.     As Merchandisers, Plaintiff, the FLSA putative class members, and the NYLL putative class members were forced to work off the clock and were denied reasonable reimbursement of automobile and business expenses resulting in a denial of minimum wage, straight time, and overtime compensation in direct violation of the FLSA and NYLL.

74.     Plaintiff and other similarly situated Merchandisers regularly performed off-the-clock work and worked in excess of forty hours per week without receiving the required minimum wages, straight time, and overtime compensation in violation of the FLSA and the NYLL.

75.     Plaintiff's FLSA claims challenge Defendant's policy, practice, and procedure of failing to pay employees for all time worked and failing to reimburse employees for automobile and other business related expenses. This results in NRS's failure to pay Merchandisers minimum wages and all other wages due under the FLSA.

76.     Plaintiff and similarly situated Merchandisers are seeking recovery of all unpaid minimum wages, straight time, and overtime compensation wrongfully withheld in violation of the FLSA, as well as all attorneys' fees, costs, and expenses incurred in this action. Pursuant to the FLSA Section 16(b), 29 U.S.C. §216(b), Plaintiff brings this action as an "opt-in" collective action on behalf of herself and all others similarly situated.

77.     These FLSA claims may be pursued by those Merchandisers, or other persons with similar job titles, duties, and compensation structures, who have been employed by Defendant and who opt-in to this case pursuant to 29 U.S.C. § 216(b).

78.     Plaintiff's NYLL claims challenge Defendant's practice of failing to pay employees for all time worked at the applicable hourly rates and for failing to reimburse employees for automobile and other business related expenses resulting in a failure to pay employees all minimum and overtime wages due. This is a violation of the NYLL. Plaintiff and the state law Putative Class Members are seeking recovery of all wages withheld and liquidated damages, together with an award of all attorneys' fees, costs, and expenses incurred in this action. Plaintiff brings this action individually and on behalf of all others similarly situated as an "opt-out" class action pursuant to FED. R. CIV. P. 23.

79.     Plaintiff's NYLL claims challenge Defendant's practice of failing to pay employees for all time worked and failing to reimburse employees for automobile and other business-related expenses that result in NRS's failure to pay its employees minimum wages and all wages due, which is a violation of the NYLL. Plaintiff and the state law putative class members are seeking recovery of all unpaid minimum wages, straight time, and overtime compensation, together with an award of all attorneys' fees, costs, and expenses incurred in this action. Plaintiff brings this action individually and on behalf of all others similarly situated as an "opt-out" class action pursuant to FED. R. CIV. P. 23.

80.     The NYLL claims may be pursued by those Merchandisers, or other persons with similar job titles, duties, and compensation structures, who have been employed by Defendant and do not opt-out of this case pursuant to FED. R. CIV. P. 23.

81.    At all times relevant herein, Plaintiff, the FLSA Putative Class Members, and the NYLL Putative Class Members are/were similarly situated in that:

A.    They were employees of the Defendant under state and federal law;

B.    They held the position of Merchandiser, or other positions with similar job titles, duties, and compensation structures;

C.    They were only compensated for in-store time, except times for which they were required to clock out, therefore were forced to work off-the-clock in order to complete their necessary job duties;

D.    They travelled to Defendant-assigned retail stores using automobiles neither owned nor maintained by NRS;

E.    They were not compensated for time spent travelling to Defendant-assigned retail stores;

F.    They incurred costs for gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, and depreciation of their automobile ("automobile expenses") while travelling to their assigned retail stores for the primary benefit of NRS;

G.    They incurred costs for internet and/or data service access, and cell phone service while planning for store visits for the primary benefit of NRS;

H.    They were subject to NRS's same pay policies and practices;

I.    They were subject to the same Merchandiser reimbursement policies, which underestimate both automobile and business expenses, thereby systematically depriving Merchandisers of reasonably approximate reimbursements, resulting in their paid wages falling below federal and state minimum wages in some or all workweeks;

J.    They were reimbursed similar amounts per mile driven, were not permitted to claim the first thirty miles driven each day, and were not paid for drive time;

K.    They were paid an hourly wage equal to or very near Plaintiff's hourly rate of $14.00 per hour, but were not paid for all hours for which employer required them to perform compensable activities;

L.    They were not compensated for all hours worked nor for all expenses including automobile and other business expenses resulting in a denial of a minimum wage, straight time, and overtime compensation in direct violation of the NYLL.

82.    Plaintiff brings Count I – Merchandisers' FLSA Claim as a nationwide "opt-in" collective action pursuant to 29 U.S.C. § 216(b). Individually as well as on behalf of all other similarly situated Merchandisers or others with similar job titles, duties, and compensation structures, Plaintiff seeks relief on a collective basis challenging Defendant's policies practices, and/or procedures of failing to pay employees for all time worked and for failing to reimburse employees for automobile and other business-related expenses resulting in a failure and refusal to pay its Merchandisers all minimum wages, straight time, and overtime compensation at the applicable legal rates in violation of the FLSA. Therefore, the FLSA Putative Class Members, pursuant to Count I, are defined as:

> All current and former Merchandisers, and others with similar job titles, duties, and compensation structures, who have worked at any time within the preceding three-year period for the Defendant and who, during one or more workweeks, were not reimbursed for all automobile or other business-related expenses and/or who were not paid for all time spent performing work-related activities.

83.    Defendant has failed to compensate Plaintiff and the FLSA Putative Class Members for due and owing minimum wages, straight time, and overtime compensation the the applicable

legal rates set by the FLSA. Therefore, Defendant violated, and continues to violate the FLSA, 20 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 206 & 207.

84.     As alleged herein, the foregoing conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Defendant's conduct was willful in that it knew its payroll policies, practices, and/or procedures were in violation of the FLSA or it showed reckless disregard as to whether such policies, practices, and/or procedures violated the FLSA.

85.     Plaintiff brings Count II – Merchandisers' NYLL Unpaid Wages Claims as a class action against Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff seeks relief, both individually and on behalf of other similarly situated employees, on a class basis challenging the Defendant's policies, practices, and/or procedures that cause a failure to pay employees for all time worked at the legally applicable wage rates and for failing to reimburse employees for automobile and other business-related expenses which also results in a a failure and refusal to pay Merchandisers all minimum and overtime wages due in violation of the NYLL. Pursuant to Count II, the NYLL Class Members are therefore defined as:

> All current and former Merchandisers, and others with similar job titles, duties and compensation structures, who have worked at any time within the preceding six-year period for the Defendant within the state of New York and who, during one or more workweeks, were not reimbursed for all automobile or other business-related expenses and/or who were not paid for all time spent performing work-related activities.

86.     Plaintiff's NYLL claims against Defendant satisfy the numerosity, commonality, typicality, adequacy, and superiority requirement of a class action.

87.     The NYLL Class satisfies the numerosity standards, as the members are believed to be in excess of 100 individuals. As a result, joinder of all NYLL Putative Class Members in a

single action is impracticable. NYLL Putative Class Members may be informed of the pendency of this class action through direct mail.

88.     Common questions to the Class of fact and law predominate over any questions that affect individual members. The questions of fact and law that are common to the Class and result from Defendant's action include, without limitation:

    A.     Whether Defendant had a policy, practice, and/or custom of requiring Merchandisers to work off-the-clock;

    B.     Whether Defendant had a policy, practice, and/or custom of failing to pay Merchandisers all wages due to them;

    C.     Whether Defendant had a policy, practice, and/or custom of failing to reasonably approximate and pay automobile and business expenses for its Merchandisers;

    D.     Whether Defendant's compensation policies and practices properly accounted for the time its Merchandisers were actually working;

    E.     Whether Defendant's withholding of minimum wages, straight time, and overtime compensation from Merchandisers was lawful under the state law and its implementing regulations;

    F.     Whether Defendant knew or had reason to know such policies and compensation practices were unlawful; and

    G.     Whether Defendant retained a benefit for such unlawful policies and compensation practices.

89.     The aforementioned common questions predominate over any questions that affect individual persons. A class action is the superior procedural vehicle for fair and efficient adjudication of the claims asserted herein because:

A.      There is minimal interest of members of these classes in individually controlling prosecution of their claims under the NYLL in that all claims will be similar in nature under the Court's analysis of the Defendant's time recording policy and its compliance with New York law;

B.      There is no known prior litigation being prosecuted against Defendant by these classes of employees for NYLL violations;

C.      All class members will have the same legal claims for violations of the NYLL, therefore it is desirable to concentrate the litigation of these claims simultaneously, in a single forum, efficiently, and without the duplicative effort of unnecessarily bringing these claims individually; and

D.      There are no unusual difficulties likely to be encountered in the management of this case as a class action, and Plaintiff and her counsel are not aware of any reason why this case should not proceed as a class action on the claim that Defendant has violated the NYLL. Class members can be easily identified from Defendant's business records, thereby enabling class members to have their claims fairly adjudicated by the Court or enabling them to opt-out of this class.

90.    The claims of the Representative Plaintiff are typical of those of the NYLL Class in that the class members have been subject to the same or similar unlawful practices as the Class Representative.

91.    A class action is the appropriate method for the fair and efficient adjudication of these controversies because Defendant has acted or refused to act on grounds generally applicable to respective class members covered by the NYLL, and because injunctive and declaratory relief prohibiting Defendant from further violating the NYLL is appropriate. The presentation of separate

actions by individual class members could create a risk of inconsistent and varying results, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

92.    The Class Representative, Michelle Rainboth-Venditti, is an adequate representative of the classes because her interests do not conflict with the members she seeks to represent. The Class Representative and her undersigned counsel (who have employment and class action lawsuit experience) can and will fairly and adequately protect the interests of the class members.

93.    Maintenance of these actions as class actions is a fair and efficient method to resolve these controversies. It would be impracticable and undesirable for each member of the classes to bring a separate action. Further, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and would likely result in inconsistent adjudications, while a single class action can determine the rights of all class members in conformity with the interest of efficiency and judicial economy.

94.    The absence of a class action would unjustly enrich Defendant by enabling it to retain the benefits and fruits of its wrongful violations of law.

95.    Defendant has failed to compensate Plaintiff and the Putative Class Members with all minimum wages, straight time, and overtime compensation at the applicable legal rates set by state and federal law, therefore, Defendant has violated, and continues to violate state wage laws.

96.    The foregoing conduct, as alleged herein, was willful and without a good faith basis to believe that their conduct was in compliance with the law.

## COUNT I – MERCHANDISERS' FLSA CLAIM

97.    Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

98.    At all relevant times herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

99.    Among other things, the FLSA requires employers, whose employees are engaged in interstate commerce; engaged in the production of goods for commerce; or employed in an enterprise engaged in commerce or the production of goods for commerce, to pay employees the minimum wage for all time worked and overtime pay at a rate not less then one and one-half their regular rate of pay for work performed in excess of forty hours in a work week. 29 U.S.C. § 206(a); 29 U.S.C. § 207 (a)(1).

100.    Plaintiff Michelle Rainboth-Venditti and those similarly situated were employed and worked as a Merchandiser for National Retail Solutions.

101.    As an integral and indispensable part of their job duties, Plaintiff and the putative class members were frequently required to perform work without pay.

102.    Plaintiff Michelle Rainboth-Venditti and other similarly situated Merchandiser employees frequently worked more than forty hours in a single workweek.

103.    Plaintiff Michelle Rainboth-Venditti and other similarly situated Merchandiser employees were not properly compensated at the applicable straight time and overtime premiums that are due and owing for the hours which they worked in excess of forty in individual weeks.

104.    Prior to and during Plaintiff's employment with Defendant NRS, NRS employed other individuals who performed work both before and after their work shifts as an integral and indispensable part of the principle activities of performing their job, and who had similar job duties and compensation structures as Plaintiff. The Plaintiff and the putative class members performed work on NRS's behalf and are referred to as the "similarly situated" or the "putative class members."

105.    The above described off-the-clock work, often caused the similarly situated employees to work in excess of forty hours in a single week. The similarly situated employees have not been properly compensated for this work at the FLSA required one and one-half times their regular rate of pay.

106.    Plaintiff brings this Complaint as a nationwide collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b) on behalf of all persons who:

A.    Within the last three years;

B.    Were or will be employed by Defendant NRS as Merchandisers (and all other positions that have sufficiently similar job and compensations structures);

C.    Performed off-the-clock work that was integral and indispensable to the principle activities of their job, on NRS's behalf; and

D.    Have not been compensated at one and one half times their regular rate of pay for all work performed in excess of forty hours in a week.

107.    Plaintiff and the putative representative action plaintiffs are similarly situated, have substantially similar job requirements, duties, and pay provisions, and are subject to Defendant's common practice, policy, and/or procedure of refusing to pay straight time and overtime for off-the-clock performance of integral and indispensable work that comprises principal job activities, which violates the FLSA.

108.    The names and address of the putative class members to the representative action are available from the Defendant. To the extent required by law, notice will be provided to these individuals via First Class Mail and/or by the use of techniques through a form of notice similar to those customarily used in representative actions.

109.    The FLSA requires each non-exempt covered employee, like the Plaintiff and all others similarly situated, to be compensated at a rate of not less that one and one-half their regular rate of pay for work performed in excess of forty hours in each workweek.

110.    The FLSA requires each covered employer, like Defendant NRS, to compensate all non-exempt employees at a rate of not less than one and one-half the regular rate of pay for work performed in excess of forty hours in each workweek.

111.    Neither Plaintiff nor the putative class members of the FLSA representative action are exempt from the right to receive overtime pay under the FLSA. Similarly, Plaintiff and the putative class members are not exempt from the requirement that their employer pay them minimum wages and overtime compensation as required by the FLSA. As such, Plaintiff and the putative class members of the FLSA representative action are entitled to be paid overtime compensation for all overtime hours worked.

112.    At all relevant times, Defendant has had a policy, practice, and/or procedure of failing and refusing to pay, at the applicable wage rates, straight time and overtime pay for all compensable hours worked by its Merchandisers.

113.    Defendant failed to compensate Plaintiff and all other similarly situated employees at the applicable minimum wage rates and at a rate of not less than one and one-half times their regular rate of pay for work performed in excess of forty hours in a workweek. Therefore, Defendant violated, and continues to violate, the FLSA, 29 U.S.C. § 201, *et seq.*, including 29 U.S.C. § 207(a)(1).

114.    As alleged herein, the foregoing conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Defendant's conduct was willful in that it knew that its time recording and/or reimbursement policies, practices, and/or procedures constituted a violation

of the FLSA or in that Defendant showed reckless disregard as to whether its policies, practices, and/or procedures violated provisions of the FLSA.

115.    Plaintiff, individually and on behalf of all similarly situated NRS employees, seeks damages in the amount of all unpaid straight time and overtime compensation at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours per week, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems to be just and proper.

116.    Additionally, Plaintiff, individually and on behalf of all similarly situated NRS employees, seeks recovery of all attorneys' fees, costs, and expenses for this action, to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiff Michelle Rainboth-Venditti, individually and on behalf of all similarly situated employees demands judgment against Defendant National Retail Solutions, Inc. pursuant to the Fair Labor Standards Act. Accordingly, Plaintiff prays for the following relief:

A.    Designation of this action as a collective action on behalf of the proposed members of the FLSA representative action and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

B.    Designation of Plaintiff Michelle Rainboth-Venditti as the Representative Plaintiff of the putative members of the FLSA representative action;

C.    Designation of Plaintiff's counsel, Osman & Smay LLP and Michael J. Redenburg, Esq. P.C., as Class Counsel of the putative members of the FLSA Representative Action;

D.     An award of damages for all unpaid wages, including overtime compensation, due to the Plaintiff and to the putative class members, to be paid by Defendant NRS;

E.     An award of liquidated damages for all wages due and owing to Plaintiff and the putative class members to be paid by Defendant;

F.     An award of the Costs and Expenses of this action, in addition to reasonable attorneys' and experts' fees.

G.     Pre-judgment and Post-judgment interest, as provided by law; and

H.     Any and all other legal and equitable relief as the Court deems necessary, just, and proper.

### COUNT II – Violation of New York State Labor Law
**(Brought by Plaintiff Individually and On Behalf of the New York Rule 23 Class)**

117.    Plaintiff incorporates the foregoing paragraphs as though fully set forth herein

118.    Defendant has engaged in a widespread pattern, policy, and/or practice of violating the New York State Labor Law (NYLL).

119.    At all relevant times, the members of the New York class have been "employees" and Defendant NRS has been an "employer" and/or "joint employer" within the meaning of the NYLL.

120.    The minimum and overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendant and protect Plaintiff and the putative class members.

121.    By not compensating Plaintiff and the New York class members for all work performed on behalf of NRS at the applicable minimum and overtime wage rates, Defendant failed to pay Plaintiff and the putative members all of the wages which they are entitled to under the NYLL.

122.    By Defendant's failure to pay the members of the New York Class all minimum wages and overtime wages for hours worked in excess of forty hours per week, Defendant violated NYLL §§ 650 *et seq.*, and supporting New York State Department of Labor Regulations in 12 N.Y.C.R.R. Part 142.

123.    Due to Defendant's violations of the NYLL, the members of the New York Class are entitled to recover, from Defendant, their unpaid minimum and overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**WHEREFORE**, Plaintiff, individually and on behalf of the Rule 23 class members, prays for the following relief:

A.    An Order that New York Count II of this action may be maintained as a class action pursuant to Fed. R. Civ. P. 23;

B.    Designation of Plaintiff Michelle Rainboth-Venditti as the representative of the Rule 23 Class;

C.    Designation of Plaintiff's counsel, Osman & Smay LLP and Michael J. Redenburg, Esq. P.C., as Class Counsel of the Rule 23 Class.

D.    Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful under the NYLL and its supporting New York State Department of Labor Regulations;

E.    An award of damages for all unpaid wages, including minimum and overtime compensation, due to the Plaintiff and the class members, to be paid by Defendant NRS;

F.      An award of liquidated damages for all wages due and owing to Plaintiff and the putative class members to be paid by Defendant;

G.      An award of the Costs and Expenses of this action, in addition to reasonable attorneys' and experts' fees.

H.      Pre-judgment and Post-judgment interest, as provided by law;

I.      Statutory damages set forth in NYLL §§ 198 1-b & 1-d, together with costs and reasonable attorneys' fees for Defendant's continuing violation of NYLL § 195;

J.      An injunction that requires Defendant to pay all wages statutorily required pursuant to the NYLL; and

K.      Any and all other legal and equitable relief as the Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues triable by jury.

## DESIGNATED PLACE OF TRIAL

COMES NOW Plaintiff, by and through her counsel of record, and hereby designates the place of trial as follows: Syracuse, New York.

Dated: February 5, 2016
      New York, NY

                                       s/Michael J. Redenburg
                                       Michael J. Redenburg (NYND #517233)
                                       Attorney for Plaintiff
                                       MICHAEL J. REDENBURG, ESQ. PC
                                       11 Park Place, Suite 817
                                       New York, NY 10007
                                       Telephone: 1-212-240-9465
                                       Fax: 1-917-591-1667
                                       E-mail: mredenburg@mjrlaw-ny.com

s/Matthew E. Osman
Matthew E. Osman (NDNY Bar Roll #517278)
Attorney for Plaintiff
OSMAN & SMAY LLP
8500 W. 110th Street, Suite 330
Overland Park, KS 66210
Telephone: 1-913-667-9243
Fax: 1-866-470-9243
E-mail: mosman@workerwagerights.com